CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 0 1 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TONY D. GLENN, )
      Plaintiff, )
) Civil Action No. 7:05CV00619
)
v. ) **MEMORANDUM OPINION**
)
BRIAN LAFON and ATLAS LOGISTICS ) By: Hon. Glen E. Conrad
   GROUP RETAIL SERVICES ) United States District Judge
   (ROANOKE) LLC, )
)
      Defendants. )

    This case is before the court on the defendants' motion to dismiss. The case is appropriately before this court on federal diversity grounds. 28 U.S.C. § 1332. The plaintiff is domiciled in South Carolina. Brian Lafon is a domiciliary of Virginia, and Atlas Logistics Group Retail Services (Roanoke) LLC ("Atlas") is a foreign corporation that is organized under Delaware law and with its principal place of business in Toronto, Canada. For the reasons stated below, the defendants' motion will be granted.

### Factual and Procedural Background

    Plaintiff Tony Glenn was injured on the evening of November 29, 2003 at a cold storage warehouse in Salem owned by The Kroger Company and operated by defendant Atlas. At the time of the accident, the plaintiff was formally employed by Quick Way Express of South Carolina as a truck driver. He made routine deliveries of flowers to the warehouse, where it was his practice to unload his own vehicle using equipment provided by Atlas, rather than to hire Valley Logistics Services of Salem, LLC (an unloading service under contractual arrangement with Atlas). The plaintiff would accept the assistance of warehouse personnel in unloading his truck when such help was available.

On November 29, 2003, the plaintiff made a delivery to the warehouse and received the assistance of Douglas Hall and defendant Brian Lafon, both employees of Atlas Cold Storage, in unloading pallets of flowers from his truck. The plaintiff used one of Atlas' pallet jacks to remove pallets from his truck and place them in the space between the loading bay where his truck was located and the adjacent loading bay. Lafon used his forklift to remove pallets from Glenn's truck and to put the pallets directly onto the shelving above the door of an adjacent loading dock.

At this point in the sequence of events, the parties' understandings of the facts diverge. The plaintiff states that his truck had been completely unloaded and that Lafon was in the process of storing the pallets on the shelves when the accident occurred. According to the plaintiff, the position of Lafon's forklift prevented him from closing his trailer doors, so he was waiting for Lafon to move the forklift. During his wait, the plaintiff states that Lafon ran the forklift into his foot, crushing it between the forklift and the floor-jack.

According to the defendants, the unloading process was still underway when the accident occurred. They claim that while Lafon was backing the forklift away from the shelving, the plaintiff jumped off of the pallet jack into the forklift's path. When Lafon halted the forklift he turned and saw the plaintiff hopping on one foot. Hall saw the forklift come very close to the plaintiff after the plaintiff had jumped off of the pallet jack, and he then saw the plaintiff hobbling.

## Discussion

The twin issues before the court are whether subject matter jurisdiction exists and whether the plaintiff has stated a claim upon which relief can be granted. Virginia law governs this diversity action. See Pendley v. United States, 856 F.2d 699, 701 (4th Cir. 1988); Jones v.

2

R.S. Jones and Assocs., Inc., 246 Va. 3, 5, 431 S.E.2d 33 (1993) (reaffirming that *lex loci delicti* is the "settled rule in Virginia").

### *Subject Matter Jurisdiction*

A complaint will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) only when the plaintiff is unable to prove any set of facts in support of his claim which would entitle him to federal subject matter jurisdiction. The court accepts all well-pleaded factual allegations as true. Jenkins v. McKeithen, 395 U.S. 411 (1969); Falwell v. City of Lynchburg, 198 F. Supp. 2d 765, 771-72 (W.D. Va. 2002). In considering a motion to dismiss under Rule 12(b)(1), the court may examine evidence outside the pleadings. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) ("[I]t may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."). The district court will "apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In particular, "[t]he plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). The motion should be granted only where "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Central to the decision as to whether the motion to dismiss is appropriate is the status of the plaintiff at the time of the accident. If Glenn was a statutory employee of Atlas under VA.

3

Case 7:05-cv-00619-GEC   Document 13   Filed 03/01/06   Page 3 of 9   Pageid#: 94

CODE ANN. § 65.2-302(A), then this court lacks subject matter jurisdiction by operation of the exclusivity provision of the Virginia Workers' Compensation Act ("Act"). VA. CODE ANN. § 65.2-307(A). If, however, Glenn was not a statutory employee, and thus not within the scope of the Act, subject matter jurisdiction is proper in this court.

In support of their motion to dismiss for lack of subject matter jurisdiction, the defendants assert that the plaintiff's sole remedy for his injury on November 29, 2003 is under the Act. Section 65.2-307 of the Code of Virginia states that the rights and remedies granted under the Act are exclusive of all others. This section applies to both actual and statutory employees. VA. CODE ANN. § 65.2-302(A). The defendants contend that the plaintiff was their statutory employee at the time that he was injured, and thus the exclusivity provision of the Act stands as a bar to the plaintiff's complaint. The sole exception to the exclusivity provision is that a plaintiff may maintain an action against an "other party." VA. CODE ANN. § 65.2-309; Clean Sweep Prof'l Parking Lot Maint., Inc. v. Talley, 267 Va. 210, 213, 591 S.E.2d 79 (2004). An "other party" is someone who is a "stranger to the trade, occupation, or business in which the employee was engaged when he was injured." Id.; see also Feitig v. Chalkley, 185 Va. 96, 104, 38 S.E.2d 73 (1946) (explaining that "'other party,' ... refers exclusively to those persons who are strangers to the employment *and the work*" (emphasis added)).

Whether an individual is a statutory employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined according to the facts of each case. Burch v. Hechinger Co., 264 Va. 165, 169, 563 S.E.2d 745 (2002). Examining the facts of this case and the body of case law on § 65.2-302(A), the court finds and concludes that Glenn was the statutory employee of Atlas at the time the accident occurred.

4

The plaintiff alleges that he was finished unloading his truck, and therefore had completed his delivery obligations and period of statutory "employment," at the time of the accident. Section 65.2-302(A) provides that:

> When any person (referred to in this section as "owner") undertakes to perform or execute *any work which is a part of his trade, business or occupation* and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

VA. CODE ANN. § 65.2-302(A). The "trade, business or occupation" of Atlas at the warehouse is "the business of *receiving* and storing various refrigerated items from carriers and then providing these retail items to Kroger delivery personnel for delivery to Kroger retail locations." Declaration of B.A. "Buddy" Smith, at 1 (emphasis added). The accurate accounting for all delivered goods is integral to the business of warehousing. Without confirmation of the accurateness of the delivery, the warehousing business could not go on. Thus, merely depositing goods in a spot in or near the warehouse cannot be the final act of delivery.

In his occupation as a truck driver and in his actions in unloading his trailer at the warehouse, the plaintiff indisputably undertook to assist Atlas in its function as a receiver of flowers for distribution. The receipt of his cargo was an integral part of Atlas' warehousing operation, for without such receipt, the business of warehousing could not take place. In this case the unloading of the flower pallets was an act of warehousing, not the final act of delivery. Cf. Burroughs v. Walmont, Inc., 210 Va. 98, 100, 168 S.E.2d 107 (1969) (holding that, where the relevant business was construction, "the stacking of sheetrock ... constituted the final act of delivery, not an act of construction").

5

Taking all factual conflicts in the light most favorable to the plaintiff, the evidence is that all of the pallets and the borrowed pallet jack were off of his truck and he was simply waiting for Atlas' employees to complete the papers necessary to confirm his delivery. The plaintiff does not contest the defendants' assertion that at the time of the accident, the paperwork required to document the delivery had not yet been executed. The completion of that documentation, not the completion of the unloading of the goods from the truck, constitutes the final act of delivery.

On similar facts, the United States Court of Appeals for the Fourth Circuit has held that transporting goods to a distribution center constitutes an activity that is an essential part of the grocery business. See Hayden v. The Kroger Co., 17 F.3d 74, 77 (4th Cir. 1994). If transportation is essential to the grocery business, it is even more critical to the grocery warehousing business. Thus, Glenn was a statutory employee performing Atlas' express business throughout the time he was making his delivery, from the moment he began unloading his truck until the point at which he had completed the necessary paperwork. The plaintiff takes exception to the assertion that deliverypersons are always engaged in the receiving party's business when they are on the premises, and this court does not now presume to state such a rule. While there may be instances where a person making a delivery to Atlas' warehouse would not constantly be engaged in Atlas' trade or business, the facts of the present case demonstrate that Glenn was continuously so engaged.

The Supreme Court of Virginia has similarly held that transportation can be an essential element of a business. In Conlin v. Turner's Express, Inc., 229 Va. 557, 331 S.E.2d 453 (1985), the Court determined that the transportation of machinery and parts between Ford plants was an essential component of Ford's business. See also Floyd, Adm'x v. Mitchell, 203 Va. 269, 372,

6

123 S.E.2d 369 (1962) (holding that a pipe manufacturer's business included the shipping of the pipe to customers). In this case, the intake, storage, and dispatch of transported items constitutes the entirety of Atlas' business. Consequently, when the plaintiff arrived with his cargo at the loading dock, he was engaged in the defendant's business as a statutory employee, as contemplated by § 65.2-302(A).

The plaintiff's contentions that he did not participate in any of the warehouse activities is unavailing. Burroughs and Hipp v. Sadler Materials Corp., 211 Va. 710, 180 S.E.2d 501 (1971) addressed distinct factual circumstances. In Burroughs, the deliveryman sued the general contractor of the construction site where he was injured. 210 Va. at 108. The Court distinguished Bosher v. Jamerson, 207 Va. 539, 151 S.E.2d 375 (1966), which held that a plaintiff who was obligated to deliver and spread sand was engaged in the business of the general contractor when he was spreading the sand. Id. at 543-44. Conversely, in Burroughs, the plaintiff merely deposited sheetrock at a construction site. 210 Va. at 99. In Hipp, the plaintiff was injured by a concrete deliveryperson at a construction site. 211 Va. at 710. The Court noted that the concrete delivery company's agreement was to deliver concrete to forms as directed, but not to spread or finish the concrete. Id. at 710-11. On the basis of that agreement, the Court held that the tortfeasor was "performing in our opinion the final act of delivery, not an act of construction," and therefore the Act did not bar the action. Id. at 711.

These cases are clearly distinguishable from the facts at issue here. The relevant business in both of the prior cases was construction, here it is warehousing. Construction, of course, requires that materials be delivered to the site, however, unlike in warehousing, the delivery is not an end in and of itself. The receipt of items to be stored is an absolutely essential part of

7

warehousing operations. Moreover, the scope of the cross-dock handling operations Atlas engages in unquestionably encompasses the unloading of cargo. Atlas employees regularly assist truck drivers in unloading their trailers and, indeed, independent workers under contract with Atlas can be hired for the express purpose of unloading trailers.

The fact that Atlas does not own the warehouse as well as operate it does not differentiate this case from the situation in Hayden such that a different outcome is required. See Hayden, 17 F.3d at 75. The purpose of the Act is to make employers, specifically owners, contractors, and subcontractors, liable to every employee engaged in work that is a part of the employer's trade, business, or occupation. See Basset Furniture Indus. v. McReynolds, 216 Va. 897, 901-02, 224 S.E.2d 323, 326 (1976). Atlas simply replaced Kroger as warehouse operator, thus becoming Kroger's subcontractor. Both the Act and the rule enunciated in Hayden clearly contemplate this situation. Indeed, the fact that Atlas' primary business is warehouse operation makes the outcome even more clear than in Hayden, because the cross-dock handling operations are, as previously stated, an essential element of the business of warehousing. Thus, when the plaintiff engaged in the work of cross-dock handling by beginning the process of unloading his truck, stacking the pallets, having the pallets checked, and completing the required paperwork, he became a statutory employee of Atlas. His status as such requires the conclusion that under § 65.2-307, his action in this court is barred as a result of lack of subject matter jurisdiction.

8

*Failure to State a Claim*

In the alternative, the defendants move for dismissal under failure to state a claim under Rule 12(b)(6). In support of this motion, they present substantially the same argument as under Rule 12(b)(1), and as the matter is more appropriately disposed of under that rule, this alternative theory of dismissal is now moot.

## Conclusion

The transportation of goods to the warehouse, including the unloading and storage procedures, is an essential part of Atlas' warehousing business. When the plaintiff suffered his injury, he was engaged in Atlas' usual trade, business or occupation, and therefore was within the scope of the Virginia Workers' Compensation Act. Pursuant to the exclusivity provision of § 65.2-307, his sole relief is under the Act. Thus, this court lacks subject matter jurisdiction and will dismiss the case under Rule 12(b)(1).

DATED this 1st day of March, 2006.

_____
United States District Judge